**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAWRENCE LEVINE,** | : | **No. 1:26cv1463** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **TRAVELERS PROPERTY CASUALTY** | : | |
| **INSURANCE COMPANY** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

On May 6, 2026, Plaintiff Lawrence Levine brought suit in the Dauphin County, Pennsylvania Court of Common Pleas against his auto insurer, Defendant Travelers Property Casualty Insurance Company, after it denied coverage for medical expenses he deems related to a car crash. (Doc. 1-3). Defendant removed the matter to this court based on the court's diversity jurisdiction. (Doc. 1). In his amended complaint, Levine brings one count of breach of contract, and one count of bad faith. (Doc. 7 at 4, 7). Before the court is defendant's motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the bad faith claim. (Doc. 9). For the reasons stated herein, the motion will be granted.

**Factual Background**[1]

Plaintiff Lawrence Levine was involved in a high-energy, head-on motor vehicle accident on August 20, 2024, when he was traveling at 45 MPH and a car turned across his lane, directly in his path. (Doc. 7 ¶ 3). As a result of the accident, Levine's vehicle was a total loss. Id. ¶ 4. The accident was investigated by the Pennsylvania State Police. Id. ¶ 5 (citation omitted). Kaelea Rheaume-Holnick was indicated to be the cause of the accident. Id. ¶ 6 (citation omitted). At the time of the accident, Levine was insured under an automobile insurance policy underwritten by defendant. Id. ¶ 7. The policy provides $100,000 in first-party medical expense coverage. Id. ¶ 8.

As a result of the accident, Levine sustained traumatic injuries including but not limited to a seat belt injury causing bruising and left shoulder hematoma, neck and back strain, bilateral shoulder pain with some radicular symptoms, bilateral hip and knee contusions, [apparently other] contusions, headaches, and concussion. Id. ¶ 9. Following the accident, Levine gave timely notice to defendant of his injuries and made a claim for first-party medical benefits. Id. ¶ 10. As a result of the accident, Levine received medical treatment, incurring

[1] When considering motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), facts alleged in a complaint are taken as true. Trzaska v. L'Oreal USA, Inc., 865 F.3d 155, 162 (3d Cir. 2017). To comply with this standard, the court recites the factual background nearly verbatim as to that stated in plaintiff's complaint. (See Doc. 7).

medical expenses in the process. Id. ¶ 11. Levine is expected to continue to incur medical expenses for an indefinite period into the future in order to receive treatment for the injuries sustained in the accident. Id. ¶ 12.

To date, Levine has incurred $9,549.00 in reasonable and necessary medical expenses that are believed to have been rejected by defendant and remain unpaid—$8,797.00 for provider Madden and Gilbert Physical Therapy, and $752.00 for provider UPMC Pinnacle. Id. ¶ 13. Plaintiff believes that these bills and records have been submitted to defendant. Id. ¶ 14.

On these facts, plaintiff brings one count of breach of contract and one count of bad faith against the insurer. Id. ¶¶ 16–32. Defendant moves to dismiss the bad faith count because (1) the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL) "provides the exclusive remedy for denial of first-party medical benefits; and (2) "Levine has not alleged facts sufficient to show that his claim falls outside of the confines of the MVFRL." (Doc. 9 ¶¶ 15, 19). The matter has been briefed by the parties and is ripe for disposition.

**Jurisdiction**

The amended complaint invokes the court's diversity jurisdiction, as the parties are citizens of different states, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1); (see Doc. 7 ¶¶ 1–2, 8, 11–12 and p. 9; accord Doc. 1 ¶¶ 15–17).

**Standard of Review**

The court tests the sufficiency of a complaint's allegations when considering a Rule 12(b)(6) motion. To survive a motion to dismiss, "a complaint must provide 'a short plain statement of the claim showing that the pleader is entitled to relief.'" Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)). This means "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pleaded "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 566). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. Oldham v. Pa. State Univ., 138 F.4th 731, 743 (3d Cir. 2025). The second step involves reviewing the operating pleading and "disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual."

Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citation modified). "The third step evaluates the plausibility of the remaining allegations." Id. In evaluating the plausibility of the plaintiff's allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. Id. (citations omitted).

## Analysis

### I. Exclusive Remedy

This suit arises out of defendant's refusal to pay plaintiff's first-party medical expenses. (See generally Doc. 7). Under the MVFRL:

> Benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the amount of the benefits. If reasonable proof is not supplied as to all benefits, the portion supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Overdue benefits shall bear interest at the rate of 12% per annum from the date the benefits become due. In the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.

75 PA. CONS. STAT. § 1716.

Although defendant paid for some medical expenses plaintiff incurred in relation to Levine's accident, (see Doc. 7 ¶ 22), at some point, defendant turned to Pennsylvania's peer review plan to determine the propriety or medical necessity of later expenses. Id. ¶¶ 21–25. Under the peer review plan, an

insurer may contract with a peer review organization ("PRO") to confirm "that [claims for] treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary." 75 PA. CONS. STAT. § 1797(b)(1). After Dr. Michael Ziev of MCN "opined that no treatment . . . would be reasonable or necessary [for Levine] after December 18, 2024," defendant denied payment of Levine's medical bills. (Doc. 7 ¶¶ 19–25). Levine alleges this denial was done in bad faith. Id. ¶¶ 29–32.

Pennsylvania's insurer bad faith statute states:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 PA. CONS. STAT. § 8371.

Defendant argues that because the MVFRL and bad faith statutes provide for inconsistent and irreconcilable remedies, the MVFRL is Levine's exclusive remedy for relief, and Levine's bad faith count should be dismissed. (Doc. 10 at 12–13). The Superior Court of Pennsylvania held similarly over thirty years ago in Barnum v. State Farm Mutual Automobile Insurance Company. See 635 A.2d

155 (Pa. Super. Ct. 1993), rev'd, 652 A.2d 1319 (Pa. 1994) (per curiam) (table). There, the court held that if an insurer "follows the PRO procedure, it cannot be subjected to damages for bad faith." Id. at 159. The holding reasoned that, under Pennsylvania law, specific, irreconcilable provisions of the MVFRL must be construed as exceptions to the more general insurer bad faith law. Id. at 495 (citing 1 PA. CONS. STAT. § 1933). Shortly thereafter, the Third Circuit adopted Barnum's holding, finding its "statutory construction to be convincing[,] and predict[ing] the Pennsylvania Supreme Court would similarly rule on this matter." Gemini Physical Therapy & Rehab. v. State Farm Mut. Auto. Ins. Co., 40 F.3d 63, 66–67 (3d Cir. 1994).

The accuracy of that prediction remains uncertain, as the Pennsylvania Supreme Court summarily reversed Barnum, 652 A.2d at 1319, leaving some courts to reconsider the MVFRL's status as exclusive remedy and the continued viability of Gemini as binding Third Circuit precedent. See, e.g., Metro. Grp. Prop. & Cas. Ins. Co. v. Hack, 312 F. Supp. 3d 439, 445–46 & n.3 (M.D. Pa. 2018); Cronin v. State Farm. Mut. Auto. Ins. Co., Civ. No. 3:06-CV-1081, 2006 WL 3098473, at *2 n.2 (M.D. Pa. Oct. 30, 2006). But because the Pennsylvania Supreme Court did not explicitly overrule the exclusive remedy holding in

Barnum,[2] courts in the Third Circuit remain bound by the Gemini court's adoption of that approach. Smith v. Calgon Carbon Corp., 917 F.2d 1338, 1343 (3d Cir. 1990) (Third Circuit precedent construing Pennsylvania law is binding "in the absence of a *clear* statement by the Pennsylvania Supreme Court to the contrary or other persuasive evidence of a change in Pennsylvania law"). For this reason, "claims challenging an insurer's determination of the reasonableness and necessity of an insured's medical treatment" remain governed exclusively by the MVFRL. Metro. Grp., 312 F. Supp. 3d at 445–46.

## II. Bad Faith Exceptions

But claims of bad faith under 42 PA. CONS. STAT. § 8371 can still be viable "when the basis of a benefits denial does not relate to the reasonableness and necessity of treatment, or when an insurer's conduct is obviously not amenable to resolution by the procedures set forth in [the MVFRL]." Id. at 447 (citation modified). Such instances arise with "claim[s] of abuse of the PRO process, or [claims] disputing the cause of injury." Hickey v. Allstate Prop. & Cas. Ins. Co., 722 F. Supp. 2d 609, 614 (M.D. Pa. 2010) (Munley, James, J.). It is under the latter exception that Levine brings his bad faith claim. (Doc. 11 at 13–21).

[2] Some courts suggest that Barnum was reversed on the issue of whether an insured is "required to seek reconsideration of an adverse PRO decision before initiating a court action to recover medical benefits under an automobile policy." Perkins v. State Farm Ins. Co., 589 F. Supp. 2d 559, 564 (M.D. Pa. 2008); Metro. Grp., 312 F. Supp. 3d at 445 n.3.

Travelers argues that Levine only brings conclusory allegations and no facts alleging Travelers used the peer review plan to determine causation. (Doc. 10 at 16–21.) The court agrees with Travelers.

Levine argues "that [d]efendant used the PRO process for an impermissible purpose—determining causation to deny coverage." (Doc. 11 at 19; see Doc. 7 ¶ 31). The claim is plainly inspired by Schwartz v. State Farm Insurance Company, which plaintiff cites to in his amended complaint. (Doc. 7 ¶ 30 (citing 1996 WL 189839 (E.D. Pa. 1996))). In Schwartz, the plaintiff alleged that State Farm denied his first-party medical benefits "based on a PRO opinion as to the cause of plaintiff's injuries," which he argued exposed the insurer to punitive damages under Pennsylvania's bad faith statute. 1996 WL 189839, at *1. The court agreed, because "nowhere" in the MVFRL, "is the determination of causation vested in a peer review organization." Id. at *6 (quoting Daumer v. Allstate Ins. Co., Civ. No. 91-7570, 1992 WL 57673, at *3 (E.D. Pa. Mar. 18, 1992) (citation modified)).

Here, the amended complaint states that defendant contracted with a peer review organization named MCN to review plaintiff's claims. (Doc. 7 ¶¶ 19–20.) It describes the report of MCN doctor Michael Ziev as a "sham" because it was "based upon a rote treatment and recovery period and ignor[ed] the findings, conclusions and recommendations" of plaintiff's "treating medical providers." Id.

¶ 21. It suggests that Dr. Ziev's "conclusions and opinions ignored treatment that [defendant] had already paid for and findings of improvements that [plaintiff] was obtaining from the ongoing treatment." Id. ¶ 22. And it recites Dr. Ziev's opinion that no treatment was "reasonable or necessary" beyond "four . . . months after the accident." Id. ¶ 23. These facts speak to the reasonableness and necessity of plaintiff's claims—not the cause of his injuries.

Levine alleges that "Travelers has paid or will pay MCN cash or other valuable consideration as part of its inducement for MCN to reach the aforementioned conclusions." Id. ¶ 24. To the extent Levine is suggesting the PRO process is not a free one, such revelation is unremarkable. If Levine is alleging Travelers paid off MCN to reach a pre-determined result, such might give rise to a cognizable claim of bad faith, see Shea v. USAA, Civ. No. 17-4455, 2018 WL 3575261, at *6–9 (E.D. Pa. July 25, 2018), but not the one Levine brings, which is tied to using the PRO process to determine causation.

Plaintiff considers it "evident" that the "peer review was used to determine causation . . . because Dr. Ziev's report disregarded [plaintiff's] documented conditions and injury improvement." (Doc. 7 ¶ 32). But the court is in possession of Dr. Ziev's report because plaintiff attached it to the amended complaint.[3] (Doc.

[3] A district court ruling on a motion to dismiss may consider documents "explicitly relied upon in the complaint . . . without converting the motion . . . into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citation modified).

7-5). And nothing in that report speaks to causation of plaintiff's injury. Id. The report questions the severity of plaintiff's injury and the reasonableness of continued treatment. Id. The MVFRL, not Pennsylvania's insurer bad faith statute, provides the exclusive vehicle for contesting such matters. Gemini, 40 F.3d at 66–67. Levine's bad faith count will be dismissed.

## III. Leave to Amend

Levine argues that if his bad faith claim is dismissed, he should be granted leave to amend. (Doc. 11 at 21). "[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted). As to equitable considerations, the court is mindful that this is Levine's second amended complaint and that defendant has now drafted two motions to dismiss. But this opinion is the court's first pass at Levine's arguments. And while the court is skeptical that Levine's claims exceed the reach of the MVFRL, such skepticism does not amount to confidence sufficient to deem amendment futile. The court will grant Levine thirty days to amend his bad faith claim. Should Levine decide that his claim squarely falls within the MVFRL, he may forego amendment, proceed on his breach of contract claim, and seek the remedies offered under that law. An appropriate order follows.

Date: 10/14/26

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court